NOTICE
Decision filed 05/29/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260187-U

NO. 5-26-0187

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-27 |
| | ) | |
| PERICE L. LADD, | ) | Honorable |
| | ) | Denton W. Aud, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CLARKE delivered the judgment of the court.
Justices McHaney and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2     The defendant, Perice L. Ladd, appeals from the Jefferson County trial court's January 16, 2026, order granting the State's petition to deny pretrial release, as well as the court's March 4, 2026, order denying his motion for relief and immediate release. For the following reasons, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4     On January 14, 2026, the defendant was charged with aggravated domestic battery, a Class 2 felony. 720 ILCS 5/12-3.3(a) (West 2024). The charge alleged that the defendant caused great bodily harm to Leslie Courtney, his girlfriend, in that he struck Courtney's face with his fists,

causing her to suffer a broken nose. The defendant was later indicted by a grand jury for the same offense on January 22, 2026.

¶ 5    The State filed a verified petition to deny the defendant pretrial release on January 15, 2026, alleging that the defendant committed a detainable offense, being aggravated domestic battery, and his pretrial release posed a real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(a)(4) (West 2024).

¶ 6    The matter proceeded to a hearing on January 16, 2026. The State provided its factual basis by proffer, based upon the Mt. Vernon Police Department's (MVPD) narrative, as well as the pretrial investigation report. The State asserted that Officer Karch of the MVPD would testify that at approximately 12:53 a.m. on December 25, 2025, he responded to a report involving a female trespassing at a residence on Apple Avenue. Upon arrival, he made contact with Leslie Courtney, who was sitting on a step of the residence with visible injuries. Officer Karch noted a "possible broken nose, multiple lumps on her head," and a large amount of blood present on her face and shirt. Emergency services were dispatched to the scene. Officer Karch took photographs of Courtney and her injuries, which were admitted into evidence and included in the record on appeal. The photographs show Courtney with visible injuries to her face as described, as well as blood on her face, in her mouth, and on her clothing.

¶ 7    The State continued its proffer, stating that Courtney provided an account to Officer Karch. She stated that she had been beaten by the defendant while inside a silver 2018 Ford Taurus. Courtney stated that she jumped out of the vehicle to escape the battery and ran to a nearby house for help. She reported that her injuries were from being struck by the defendant, but did not recall if the defendant used anything other than his fists to hit her. Courtney said that the battery occurred throughout Mt. Vernon until she eventually jumped out of the vehicle. She provided officers with

2

possible locations where the defendant might be and informed them that the defendant was subject to mandatory supervised release (MSR). Courtney stated that she wished to pursue charges against the defendant. Courtney was taken to Good Samaritan Hospital, where doctors had to heavily sedate her due to the injuries.

¶ 8    Approximately 12 hours after the initial encounter with Courtney, Officer Ackley of the MVPD received a phone call from the defendant. He informed Officer Ackley that he was the victim of the incident and wanted to complete a report for himself. The defendant said that he and Courtney were in a prior relationship, and reengaged in the relationship after he was released from prison. The previous evening, the defendant stated that he picked Courtney up and drove to locate a liquor store before going to a friend's house on Apple Avenue. The defendant stated that he, Courtney, and his friend were sitting on the porch, drinking, when he received a notification on his phone, and Courtney "began yelling at him because she thought he was cheating on her." The defendant then said he was hit over the head with a liquor bottle over his left eye. He was hit again and then blacked out. The defendant told officers he was unconscious from that point until an hour before he contacted the police. He stated he wanted to press charges and that he was going to the hospital. Officers asked the defendant to bring his medical records from the hospital, to which he informed officers that his lawyer would bring them. Officers also advised the defendant that it would be best for him to provide a statement in person so his visible injuries could be confirmed, as well as his identity. The defendant stated that his lawyer would do that and provide a statement as well.

¶ 9    Officer Jackson of the MVPD received a phone call on December 26, 2025, from the defendant, stating that he was hit first by Courtney. Further, the parties were not in a romantic relationship, but only a sexual relationship. He emailed two photos showing injuries that he

3

sustained at the hands of Courtney, and stated that he would come to the police department along with his attorney.

¶ 10    At approximately 4 p.m. on December 26, 2025, Jackson obtained a formal recorded statement from Courtney. She stated that she had been in a relationship with the defendant since October 2025, and that they "reconnected for a dating relationship which she confirmed was sexual in nature." Courtney stated that the defendant had a history of violence towards her, including a few weeks prior, when he "choked her to the point where she could not breathe and had beaten her." She had photographic evidence of her injuries, which the defendant later deleted from her phone. She said that she did not report the prior incident because the defendant threatened to kill her and her children if she did.

¶ 11    Courtney told Officer Jackson of the events of December 24, 2025, leading up to the offense. The defendant picked Courtney up, then drove to Mt. Vernon, and while parked in a driveway, the defendant began punching Courtney. When Courtney attempted to leave the vehicle, he hit her again, forced her to stay, then threatened to take her to Rend Lake to kill her. When the defendant exited the vehicle, Courtney saw her opportunity to escape and ran to a nearby house to ask the occupants to call the police on her behalf. She reported that the defendant consumed a "significant amount of alcohol."

¶ 12    Courtney told officers that there was a bottle of tequila in the defendant's vehicle, and she denied hitting the defendant with any objects. Courtney described several personal items left in the vehicle, including a purse, coat, phone, lanyard, and her wallet. She expressed fear for her safety and said that the defendant was determined to harm her.

¶ 13    Pursuant to a search warrant, Detective Kane of the MVPD processed the silver Ford Taurus that was linked to the defendant. The personal effects described by Courtney were located

within the vehicle and provided to her. There was a large amount of what appeared to be blood in the passenger seat, on the console, and partially in the driver's seat. Swabs were taken from the vehicle.

¶ 14    Defense counsel then proceeded by proffer. The defendant was 42 years old and had lived in Jefferson County for most of his life with significant family ties to the area. He was employed at the time of his arrest and was not on probation, bond, or pretrial release. Defense counsel stated that the defendant was claiming self-defense because Courtney hit him in the head with a bottle. The defendant sent pictures to Officer Jackson of a faint red mark above his left eye from the bottle injury.

¶ 15    The State then proceeded to argument, asking that the defendant be denied release pending trial. The State asserted that the defendant committed the qualifying offense of aggravated domestic battery. The State said that the crime was committed against Courtney and she "suffered grievous injuries," which were photographed shortly after the offense. The State asserted that the defendant's vehicle was located with what appeared to be an excess amount of blood in the passenger seat and center console, but the defendant was not with his vehicle, which was "incredibly suspicious given the fact pattern and given the narratives that we have at this time." The defendant contacted the MVPD approximately 12 hours after Courtney did, but he declined to come to the police department to show his injuries or provide his medical record. The State argued that the defendant "appeared to not be fully forthcoming in his level of cooperation as it would relate to these potential charges against" Courtney.

¶ 16    The State continued, arguing that the defendant had an extensive criminal history, including felony and misdemeanor domestic battery, felony aggravated domestic battery, and

5

felony residential arson, for which he was sentenced to 15 years in the Illinois Department of Corrections. He was subject to MSR at the time of the offense.

¶ 17    Courtney "clearly and unequivocally stated that she was pursuing charges" and wanted to obtain an order of protection due to her fears of the defendant. He told Courtney he was going to kill her, and the State argued, "There is a[n] absolute public safety and personal safety argument to be made on behalf of [Courtney] as it relates to her potential for more bodily harm to befall her" as well as the psychological harm that would come from the defendant's release.

¶ 18    The State argued that no condition or combination of conditions would ensure that the defendant would not violate any further laws or appear for court dates, as he was already under mandatory supervision when the offense occurred. The State asked for the defendant to be detained.

¶ 19    Defense counsel then argued that the defendant was willing to submit to any conditions of release, such as electronic monitoring and home confinement. Courtney lived in a different county from the defendant, and the defendant asserted that he acted in self-defense. Defense counsel argued that the State failed to prove that the defendant posed a danger to any person, persons, or the community by clear and convincing evidence, and requested the defendant's release on home confinement with electronic monitoring.

¶ 20    The trial court stated that it considered the pretrial investigation report, evidence presented by proffer, and arguments of counsel. The trial court found that the State proved by clear and convincing evidence that the proof was evident or presumption great that the defendant committed a qualifying offense, being aggravated domestic battery. The trial court addressed the photos of Courtney's "severe injuries," the defendant's claim of self-defense, and the blood located within

the vehicle. The court found that Courtney's injuries qualified as great bodily harm as well, and that the State met its burden of proving that the defendant committed a detainable offense.

¶ 21    As to whether the defendant posed a real and present threat, the trial court said that the defendant posed a threat to Courtney, as well as the community. The trial court considered the parties' actions, including Courtney's reporting the offense to law enforcement and then seeking medical treatment, but the defendant waited several hours, did not come to make a statement, and said that his lawyer would come to the police department on his behalf. The trial court found that the State met its burden.

¶ 22    As to conditions, the trial court said that the defendant's criminal history was severe, and he was on MSR, which required that the defendant comply with the conditions of his release. His history included residential arson, domestic battery, aggravated domestic battery, drug delivery, and misdemeanor domestic battery. The trial court described it as "a constant escalation." The trial court said, "It's hard to imagine that there's any condition, [Defendant], that would mitigate the risk that you pose to any person, or persons, or the community." The trial court granted the State's petition to detain. The trial court entered an order on the same date, including that less restrictive conditions would not assure the safety of any person or the community due to the nature of the case, the extent of Courtney's injuries, the defendant's criminal history, and his MSR status.

¶ 23    The defendant's counsel filed a motion for relief and immediate release on January 20, 2026. The motion alleged that the State failed to meet its burden of proving, by clear and convincing evidence, that the proof was evident or the presumption great that the defendant committed a qualifying offense, that he posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate the real and present threat. The motion argued that the trial court failed to fully consider the

7

defendant's ties to the community, willingness to abide by any terms of pretrial release, employment opportunities, claim of self-defense, and that no weapon was used in the commission of the alleged offense.

¶ 24    The matter proceeded to a hearing on March 4, 2026. Defense counsel reiterated the factual proffer provided during the initial hearing and argued that the trial court failed to consider the factors listed in the motion for relief. Defense counsel then presented a written statement from the defendant, which provided a legal argument that "the State failed to prove a qualifying relationship for domestic battery." Defense counsel asked for the defendant's release with home confinement and electronic monitoring.

¶ 25    The State said that its posture was "unchanged" from the initial detention hearing. The State asked the trial court to consider the pretrial investigation report, the photographs of Courtney's injuries that were admitted as exhibits, and the factual proffer. The defendant had an extensive criminal history and was on MSR at the time of the offense. The State argued that his MSR status "was insufficient to deter him from further criminal behavior" and took the position that no less restrictive means were available to ensure the defendant would not violate the law pending trial. The State asked for the defendant to be detained for the safety of Courtney.

¶ 26    The trial court stated that it considered the motion for relief, proffers and arguments from the initial hearing, the written statement from the defendant, and the argument from the State. The trial court denied the defendant's motion for relief. The defendant appealed.

¶ 27                                II. ANALYSIS

¶ 28    On appeal, the Office of the State Appellate Defender (OSAD) was appointed as appellate counsel. The defendant was permitted, but not required, to file a memorandum on appeal. OSAD never filed a memorandum or a notice in lieu of a memorandum pursuant to Rule 604(h)(7). "Issues

8

raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Therefore, our review is limited to the issues raised in the motion for relief.

¶ 29 The defendant's motion for relief states the following:

"7. The Court erred in granting the State's Petition to Deny Pre-Trial Release at [the initial detention hearing], in that the State failed to meet its burden of proving by clear and convincing evidence any of the above in that:

a.　　The Court failed to fully consider Defendant's ties to the community.

b.　　The Court failed to fully consider Defendant's willingness to abide by any terms of pretrial release.

c.　　The Court failed to fully consider Defendant's employment opportunities.

d.　　The Court failed to fully consider Defendant's claim of self-defense.

e.　　No weapon was used in the commission of the allege[d] offense."

¶ 30 The State argues on appeal that the defendant has waived all issues on appeal for failure to provide citations to the record in his motion for relief. While we do not agree that the defendant waived all argument due to the failure to cite to the record on appeal, we do find that he has waived all argument on appeal for failure to provide sufficient arguments with citations to any relevant authorities. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 31 "Whether made in the motion for relief alone or as supplemented by the memorandum, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." *Id.* A party may not simply "dump the burden of argument and research" on the reviewing court; rather, a reviewing court is "entitled to have the issues clearly

9

defined and to be cited pertinent authority." (Emphasis omitted.) *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56. A reviewing court "cannot be expected to formulate an argument for defendant out of whole cloth." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13.

¶ 32    "[D]efendants must endeavor to present a more complete analysis of the issues in their motions for relief or, as the rule allows, file a supplemental memorandum in support of the appeal rather than relying on the appellate court to do the work for them." *People v. Post*, 2025 IL App (4th) 250598, ¶ 23. Failure to comply with Rule 604(h)(7)'s requirement of presenting arguments with sufficient detail to enable meaningful appellate review constitutes waiver of the issue on appeal. Ill. S. Ct. R. 604(h)(7), (2) (eff. Apr. 15, 2024). Unlike forfeiture, which is a limitation on the parties, waiver is a limitation on this court and precludes review. *People v. Nettles*, 2024 IL App (4th) 240962, ¶ 29 (citing *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019) ("We reviewed forfeited arguments for plain error, whereas waiver extinguishes error and precludes appellate review.")).

¶ 33    In the present case, the defendant's motion for relief asserts that the trial court erred in granting the State's petition to deny his pretrial release due to the State's failure to meet its burden of proof for "any of the above," which includes the elements of the statute: that the proof is evident or presumption great that the defendant committed a qualifying offense, that he poses a real and present threat to the safety of any person or the community, and that no condition or combination of conditions can mitigate that threat. The motion for relief serves more than one purpose. *People v. Patterson*, 2025 IL App (1st) 250510, ¶ 18. Its initial purpose is to give the aggrieved party an opportunity to draw the circuit court's attention to any errors it may have made in the initial release

determination and give the court an opportunity to correct them. *Id.* But it also "crystalizes and frames the issues for appeal." *Id.* ¶ 19.

¶ 34 Rather than clearly arguing how the State failed to prove each element of the statute, defendant's counsel instead provided a list of factors the trial court "failed to fully consider." The arguments in the motion for relief are undeveloped. They are not applied to each element of pretrial detention and do not explain why the factors presented outweigh the other elements the trial court could consider in determining detention, such as the defendant's criminal history. The motion asserts that the trial court failed to consider the defendant's willingness to abide by pretrial release conditions, but does not argue how this consideration would outweigh the defendant's history and current status on MSR. Outside of the case law introducing the pretrial detention standard of review applicable on appeal, the motion for relief does not provide any citations to relevant authorities that would be pertinent to the defendant's case.

¶ 35 These "[b]are contentions in the absence of argument or citation of authority do not merit consideration on appeal." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). Reviewing courts are entitled to have the issues clearly defined, pertinent authority cited, and cohesive arguments presented. *Id.* The purpose of requiring the appellant's memorandum or motion for relief to contain detailed arguments is, as explained by the task force that recommended its adoption, to prohibit just such a conclusory argument in pretrial-release appeals:

"We believe that this rule is essential to discourage the boilerplate 'arguments' we have seen in the existing check-the-box notice of appeal. We remain ever mindful that, as appellate judges, *we may not serve as advocates for a party*. Presentation of the appellant's argument in a cursory manner pressures the court to abandon the role it is ethically obligated to play: that of a neutral arbiter." (Emphasis added.) Ill. S. Ct. Pretrial Release

Appeals Task Force, Report and Recommendations 8 (2024), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/628434e3-d07f-4ead b1f6 4470d7e83bf3/Pretrial%20Release%20Appeals%20Task%20Force%20Report_ March%202024.pdf [https://perma.cc/LL5Y-R4FN].

*People v. Hood*, 2026 IL App (1st) 260117-U, ¶ 13.

¶ 36 The defendant does not provide any specific argument as to the elements within his motion for relief, and it is not this court's position to argue and advocate on his behalf as to how these elements impact his pretrial detention. As the defendant has not provided any argument within his motion for relief that would contain sufficient detail to enable meaningful appellate review, he has waived all argument on appeal. Due to the defendant's waiver, any potential error has been extinguished. As such, the trial court's detention order and denial of the motion for relief are affirmed.

¶ 37                                III. CONCLUSION

¶ 38 Based on the foregoing reasons, we affirm the trial court's orders of January 16, 2026, and March 4, 2026.


¶ 39 Affirmed.